United States District Court
District of Massachusetts

Milton Jones,                    )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    Civil Action No.
                                 )    25-13084-NMG
City of Boston, et al.,          )
                                 )
        Defendants.              )
                                 )
                                 )

MEMORANDUM & ORDER

GORTON, J.

This case arises from the alleged misconduct of three now-deceased Boston Police Department ("BPD") detectives in the 1970s.[1] The three officers, Louis McConkey, Peter O'Malley and John J. Daley (collectively, "the officer defendants") purportedly framed plaintiff Milton Jones ("plaintiff" or "Jones") for robbery and murder, causing him to be convicted of those crimes and sentenced to life in prison. Pending before the Court are two motions to dismiss of Defendant City of Boston ("the City"), one for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and the other for lack of jurisdiction and

---

[1] This is one of several cases before the Court regarding alleged BPD misconduct in the 1970s. See Clark v. Farrell, et al., 24-cv-12389-NMG (D. Mass. Sept. 18, 2024); Mazza v. City Of Boston, et al., 24-cv-10333-NMG (D. Mass. Feb. 9, 2024).

-1-

insufficient service of process service under Fed.R.Civ.P. 12(b)(5) and (2).

## I.   Background

### A. Facts

In 1975, the Golden Café bar was robbed and the owner, Albert Dunn, was murdered.  Jones was convicted of those crimes in 1976 and sentenced to life in prison.  He spent 15 years in prison and almost 32 years under supervised release.  Jones maintains his innocence and alleges that his arrest, trial and conviction were all the result of unconstitutional police identification tactics.

On the night of the crime, three eyewitnesses were present: Rita McLellan, an employee of the bar, Deborah McLellan, Rita's daughter, and Alma Condo, a bar patron.  Jones claims that when the officer defendants interviewed Rita, they improperly pressured her into selecting a photo of Jones as the perpetrator.  That same day, Deborah identified a different individual as the shooter but the officer defendants nevertheless assured her that she had selected the same suspect as her mother.  Later, the officer defendants allegedly reported to the prosecutor that Deborah made no identification at all.

Jones also avers that he had previously lived in the same housing project as Condo, the third and final eyewitness, and that they had seen each other on several occasions prior to the

crime.  On the night of the shooting, however, Condo did not report to the police that she recognized the shooter.  During the following weeks, the officer defendants visited Condo at least four times, each time bearing a mugshot of Jones which Condo refused to identify as the shooter.  Jones contends that the officer defendants then promised not to prosecute Condo's daughter for illegal drug activity in return for a positive identification whereupon Condo identified Jones as one of the Golden Café perpetrators.

Jones was arrested based upon those purported false identifications.  Two of the officer defendants supposedly told Jones that the BPD would detain him, despite knowing he was innocent, unless he provided evidence against someone else. Jones refused.  The officer defendants continued to use the false eyewitness identifications throughout the investigation, and, at trial, suppressed exculpatory and impeachment evidence. Jones was ultimately convicted and sentenced to life in prison.

In August, 2020, Jones filed an assented-to motion for a new trial in state court, arguing that he had been falsely prosecuted by BPD officers for the Golden Café crimes despite the department knowing he was innocent.  In November, 2022, the Massachusetts Superior Court allowed his motion for a new trial and vacated his conviction.  The government declined to re-

prosecute the case and Jones' conviction was expunged from the record.

### B. Procedural History

In October, 2025, Jones filed this action against the City and the officer defendants.  He raises claims against the City for municipal liability under 42 U.S.C. §1983 (Count III), negligent hiring, training and supervision (Count IX) and respondeat superior (Count X).  The City moves to dismiss those three counts for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

Jones also alleges seven counts against the officer defendants, all of whom are apparently deceased: 1) deliberate suppression of material evidence under 42 U.S.C. §1983 (Count I), 2) malicious prosecution under 42 U.S.C. §1983 (Count II), 3) malicious prosecution (Count IV), 4) negligence (Count V), 5) intentional infliction of emotional distress (Count VI), 6) negligent infliction of emotional distress (Count VII) and 7) violations of M.G.L. ch. 12, §11H, (Count VIII).  Jones served the City on behalf of the officer defendants pursuant to M.G.L. ch. 190B, §3-803 by leaving a copy of the summons and complaint at the Clerk's office in Boston City Hall.  The City moves under Rules 12(b)(2) and 12(b)(5) to dismiss the claims against the officers insofar as Jones has attempted to serve them vicariously through the City (Docket No. 34).

-4-

## II.  Rule 12(b)(6)

### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiff must state a claim for relief that is actionable as a matter of law and plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### B. Application

The City moves to dismiss Counts III, IX and X under Rule 12(b)(6) (Docket No. 17).  For the following reasons that motion will be allowed, in part, and denied, in part.

#### i.  Count III: 42 U.S.C §1983

Count III alleges that the City violated Jones' constitutional rights under 42 U.S.C §1983.  A municipality may be held directly liable for constitutional torts under §1983 if it deprives a person of rights through deliberate conduct. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  Here, Jones alleges that the City directly violated his rights by virtue of 1) unconstitutional policies or customs and 2) a failure to train, supervise and discipline police officers.  The two theories require independent analyses.

-5-

A plaintiff bringing a Monell action against a municipality bears the burden of identifying an unconstitutional policy or custom that was the moving force behind his alleged injury. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403-05 (1997).  For a custom to be attributable to the municipality, it must be so widespread that policy-making officials knew or should have known of the practice yet did nothing to stop it. Baron v. Suffolk Cnty. Sheriff's Dep't, 402 F.3d 225, 236-37 (1st Cir. 2005).  A pattern of similar constitutional violations may lend plausibility to the existence of such a custom. See Haley v. City of Bos., 657 F.3d 39, 53 (1st Cir. 2011)

To state a Monell claim based upon a failure-to-train theory, a plaintiff must demonstrate that the municipal decision-makers knew or should have known that training was inadequate but were deliberately indifferent to the unconstitutional effects of such inadequacies. Haley, 657 F.3d at 52.  Deliberate indifference is typically shown through a pattern of similar constitutional violations. Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019).

Here, Jones alleges that the BPD maintained a custom of fabricating evidence against innocent defendants.  He claims that the witnesses in his case were repeatedly provided incentives and intimidated into making false identifications.

-6-

He further asserts that the officer defendants stated they would incriminate him and ultimately did withhold exculpatory evidence from prosecutors at trial.  Jones supports his claims with reports of comparable BPD misconduct and deficient training within the department during the same time period.  The City generally objects that the evidence relied upon is insufficient to establish such a widespread custom as to create civil liability.

The allegations in this case are sufficient to state a Monell claim based upon both theories.  Jones has sufficiently alleged that the officers' misconduct in his case was perpetuated pursuant an unconstitutional custom and that the BPD, despite being aware of that custom, implemented no training policy to counteract it.  While the City vigorously disputes the veracity of the extrinsic reports supplied by plaintiff, the Court must construe all well-pled facts as true and therefore concludes that Jones states a plausible Monell claim.  Such an outcome is in line with similar cases raised against the City in the First Circuit.  See, e.g., Mazza v. City of Bos., 753 F. Supp. 3d 88, 95 (D. Mass. 2024); Haley, 657 F.3d at 52-53.

Finally, defendant asserts that issue preclusion bars some of the claims raised in the complaint.  It contends that, because the state court granted the motion for a new trial on only two of the six grounds presented, Jones is precluded from

-7-

raising the remaining four issues here.  That is incorrect.  A ruling only carries preclusive effect if it has a bearing on a final judgment. Jarosz v. Palmer, 436 Mass. 526, 533 (2002). Here, Jones' motion for a new trial was allowed in full.  Any issues raised but not relied upon by that ruling were not essential to the final judgment and are thus not precluded from litigation in this case.

### ii.  Count IX: Negligent Hiring, Training and Supervision

The City moves to dismiss Count IX on the ground that plaintiff failed to timely present his claim as required under the Massachusetts Tort Claims Act ("MTCA").  The MTCA bars recovery against a public employer unless the claim was presented within two years of its accrual. M.G.L. ch. 258, §4. The presentment requirement is a strict statutory prerequisite for recovery under the MTCA. Shapiro v. City of Worcester, 464 Mass. 261, 267-68(2013).

First, Jones argues that the presentment requirement does not apply in federal court because it is displaced by several Federal Rules of Civil Procedure; i.e., a federal court exercising supplemental jurisdiction must apply a valid federal rule instead of a conflicting state law. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010); see also Bogosian v. Rhode Island Airport Corp., No. 17-1550, 2018 WL 11438429, at *1 (1st Cir. Nov. 21, 2018).  In

determining whether a federal rule and state law are in conflict, the first step is to determine whether the federal rule "answers the question in dispute." Shady Grove, 559 U.S. at 398.  If it does, the federal rule applies and displaces state law unless that rule is otherwise invalid. Id.

The United States Supreme Court recently applied that framework in Berk v. Choy, 607 U.S. 187 (2026).  In that case, the Court found that a Delaware law requiring medical malpractice claims to be filed with a so-called affidavit of merit conflicted with the "short and plain statement" requirement of Fed.R.Civ.P. 8. Id. at 189-90.  The Court determined that both rules sought to answer the same question of whether the action could be dismissed because the complaint was not accompanied by an affidavit. Id.  at 198.  Because Fed.R.Civ.P. 8 answers that question and is otherwise valid, the Delaware affidavit-of-merit law does not apply in federal court. Id. at 199.

Jones analogizes the affidavit-of-merit law in Berk to the MTCA's presentment requirement in this case.  He argues that the presentment requirement conflicts with Rule 3's mandate that "[a] civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3.  He further avers that the law conflicts: 1) with Rule 12 because a failure to present is not grounds for relief under Rule 12, and 2) with Rule 4 because

notice to a defendant requires only service of the summons and a copy of the complaint after the action is initiated.

While it may be a close call, the Court concludes that the presentment requirement does apply in federal court.  Applying the same approach as the Court in Berk, the question in this dispute is whether Jones' MTCA claims may be dismissed for untimely presentment.  None of the relevant federal rules answers that question.  Rule 3 states that "[a] civil action is commenced by filing a complaint with the court," but is silent with respect to actions that must be taken before such commencement may occur.  Similarly, Rule 4 outlines how a plaintiff must notify a defendant of a suit after it is commenced but it is silent with respect to pre-suit notice.  Moreover, while plaintiff is correct that Rule 12 does not allow for dismissal based upon untimely presentment, Rule 12(b)(6) does sanction dismissal for failure to state a claim upon which relief can be granted.  If plaintiff does not allege facts sufficient to state a claim under the MTCA, including whether he has satisfied the presentment requirement, his claim will be dismissed under that rule.

Because the Court finds that the MTCA presentment requirement applies, it turns to a consideration of whether that condition has been satisfied.  It is undisputed that Jones presented his claim to the City in October, 2023.  The City

-10-

declares that Jones became aware of his cause of action by at least August, 2020, when he filed his motion for a new trial, and that his presentment more than three years later was therefore untimely.  Jones rejoins that his cause of action did not accrue for purposes of presentment until he had actual knowledge of the relevant facts.

The Court agrees with the City that Jones was aware of his claims no later than August, 2020, and that his presentment in 2023 was therefore untimely.  The motion to dismiss will be allowed with respect to Count IX.

### iii. Count X: <u>Respondeat</u> <u>Superior</u>

Count X alleges that the City is vicariously liable under a theory of <u>respondeat</u> <u>superior</u> for the individual torts of the officer defendants alleged in Counts V, VII and VIII.[2]  The City moves to dismiss Count X on grounds specific to those counts.

Counts V and VII allege negligence and negligent infliction of emotional distress.  The City urges that, despite being pled under a theory of <u>respondeat</u> <u>superior</u>, these claims may be brought only under the MTCA and therefore fail for lack of timely presentment.  The Court agrees that these claims must be brought pursuant to the MTCA, and, for the reasons already articulated, fail for lack of timely presentment.

---

[2] Plaintiff concedes that the City cannot be held vicariously liable for the torts alleged in Counts I, II, IV or VI.

-11-

Count VIII alleges a claim under the Massachusetts Civil Rights Act ("MCRA").  The City moves to dismiss that claim on the ground that municipalities cannot be held vicariously liable under the MCRA.  Plaintiff contends that Massachusetts state courts allow for such liability.

It appears that the Massachusetts Supreme Judicial Court ("SJC") has not yet answered the question of whether municipalities may be held vicariously liable under the MCRA. While plaintiff is correct that the Massachusetts Appeals Court ("MAC") has held that employers in general may be held liable as respondeat superior for employees' torts under the MCRA, that reasoning does not extend to municipalities. Sarvis v. Bos. Safe Deposit & Tr. Co., 47 Mass. App. Ct. 86, 96, 711 N.E.2d 911, 920 (1999).  In the absence of settled state law, other federal courts have found that municipalities may not be found vicariously liable under the MCRA. See, e.g., Chaabouni v. City of Bos., 133 F. Supp. 2d 93, 103 (D. Mass. 2001); Arroyo v. City of Bos., No. 20-CV-12082-DJC, 2021 WL 2338879, at *8 (D. Mass. June 8, 2021).  This Court agrees and concludes that the City cannot be held liable in Count VIII under a theory of respondeat superior.

The motion to dismiss will therefore be allowed with respect to Count X.

## III. **Rules 12(b)(5) and (2)**

The City also moves to dismiss the complaint under Rules 12(b)(5) and (2) for lack of jurisdiction and insufficient service of process based upon its contention that it is not obligated to accept service on behalf of the deceased officer defendants. While the City may ultimately be correct, dismissal based upon the current record would be premature and the motion will therefore be denied.

Jones served the City as a representative of the officer defendants under M.G.L. c. 190B, §3-803(d)(2) ("Section 803"). Under Section 803, a plaintiff may bring a personal injury suit against a decedent over one year after death so long as any judgment is paid from a "policy of liability bond or liability insurance." If no personal representative has been appointed, service of process may be made upon the entity providing the insurance or bond. Id. In this case, Jones avers that the Collective Bargaining Agreement ("CBA") between the officer defendants and the City provides a policy of liability bond for these claims such that the City may be served as a representative of the officers.

The City first asserts that service was improper because there is no state or federal law providing that an employer must accept service on behalf of former employees. The City is correct but under Section 803 it may be required to accept

-13-

service as the holder of a liability policy rather than as a former employer.  The City's contention that the Court cannot exercise personal jurisdiction over a deceased defendant is unavailing for the same reason.

Next, the City contends that even if service was proper, Jones does not have standing to enforce the alleged indemnification because the CBA is a contract between the officer defendants and the City.  Again, Section 803 anticipates and permits service upon the holder of a liability policy and mandates that any judgment be paid from that policy.  If the CBA provides for such a policy, Jones may indeed be entitled to serve the City as a representative of the officer defendants.

Finally, the City asserts that indemnification under the CBA is permissive, rather than mandatory, and that it has long since elected not to indemnify the officer defendants.  Both parties rely on cases from this district deciding when municipal indemnification creates a "policy of liability bond" under Section 803.  See, e.g., Rosario v. Waterhouse, No. 1:19-CV-10532-LTS, 2019 WL 4765082, at *3 (D. Mass. Sept. 27, 2019) (finding that M.G.L. ch. 258, §13 acts as a policy of liability bond under Section 803); Mazza v. City of Bos., 753 F. Supp. 3d 88, 97 (D. Mass. 2024) (finding that the incorporation of M.G.L. ch. 258, §9 into a CBA does not create a policy of liability bond under Section 803).  In this case, however, neither party

-14-

has cited to the Court a specific provision of the CBA from which the disputed indemnification may or may not arise. Without such a specific reference, the Court cannot determine whether the City provided a policy of liability bond for the officer defendants such that it may be served under Section 8703. The existence of such a policy is at least plausible at this stage and the motion to dismiss will therefore be denied, without prejudice.

**ORDER**

For the forgoing reasons:

1. The motion to dismiss for failure to state a claim (Docket No. 17) is, with respect to Counts IX and X, **ALLOWED**, but is, with respect to Count III, **DENIED;** and

2. The motion to dismiss for lack of jurisdiction and insufficient service of process (Docket No. 34) is **DENIED**.

**So ordered.**

_Nathaniel M. Gorton_
Nathaniel M. Gorton
Senior United States District Judge

Dated: June 22, 2026

-15-